UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
TALLAHASSEE DIVISION

RAKESH K. PATEL,

      Petitioner,

v.                                     Case No. 4:20cv23-MW-HTC

RICKY D. DIXON,[1]

      Respondent.

_____/

## REPORT AND RECOMMENDATION

Petitioner Rakesh K. Patel ("Patel"), through counsel, filed an amended petition under 28 U.S.C. § 2254, challenging a judgment and sentence from the circuit court of Duval County, Florida, for attempted murder. ECF Doc. 16. The matter was referred to the undersigned judge for report and recommendation pursuant to 28 U.S.C. § 636 and N.D. Fla. Loc. R. 72.2(B). After considering the amended petition, the record, the State's response, ECF Doc. 19, and Patel's reply, ECF Doc. 21, the undersigned recommends the amended petition be DENIED without an evidentiary hearing.

_____

[1] Pursuant to Federal Rule of Civil Procedure 25, Ricky D. Dixon, the current Secretary of the Florida Department of Corrections, shall be substituted for Mark Inch. Fed. R. Civ. P. 25.

## I.   BACKGROUND

### A.   Offense and Conviction

Patel was charged by an Amended Information for Attempted Murder in the First Degree for the September 10, 2009 shooting of Rinku Amin ("Amin"), a man Patel believed was having an affair with his wife and plotting with her and others to murder him.  *See* Case No.: 2009-CF-12020.  The state court initially found Patel incompetent to stand trial.  Five months later, at a review hearing, the court found Patel had regained competency, released him on bond with certain conditions related to Patel's continued treatment and medication, and Patel proceeded to trial after rejecting a plea deal.

At trial, Patel's counsel admitted Patel shot Amin but argued he met Florida's definition of legal insanity at the time of the offense.  The defense offered the testimony of several family members who described Patel as suffering from paranoia, delusions, and extreme religious beliefs, which abruptly began a few months before the shooting.  Patel also offered the testimony of three psychiatrists who examined Patel and testified he was legally insane at the time of the shooting.  On rebuttal, the prosecution offered the testimony of a psychiatrist who opined that although Patel suffered from a delusional disorder leading up to, and at the time of,

the shooting, he did not meet the definition of legal insanity because his actions and statements showed he knew what he was doing, knew that it was wrong, and knew the consequences of his actions. The jury rejected the insanity defense and found Patel guilty of attempted murder; he was sentenced to the minimum mandatory sentence of 25 years.

### B.    Postconviction History and Timeliness

Under the Antiterrorism and Effective Death Penalty Act Of 1996 ("AEDPA"), a petitioner must file a habeas petition within one year of certain trigger dates. 28 U.S.C. § 2244(d)(1)(A)-(D). The applicable trigger date here is the date Patel's judgment and conviction became final. *Id.* § 2244(d)(1)(A). Patel filed a direct appeal (through counsel) to the First District Court of Appeals ("First DCA"), which affirmed, *per curiam* and without written opinion, on September 2, 2014. ECF Doc. 14-13; First DCA Case No.: 1D13-3038. He did not seek review in the Florida or United States Supreme Court. ECF Doc. 16 at 2-3. The judgment and conviction, therefore, became final on Monday, December 1, 2014.

The one-year deadline is tolled by properly filed postconviction motions until the motions are fully resolved. *See* 28 U.S.C. § 2244(d)(2). Here, Patel filed a Motion to Correct Illegal Sentence under Rule 3.800(a) on July 24, 2015, ECF Doc.

14-14 at 5.  That motion was continuously pending until December 12, 2017, when the trial court's denial was affirmed on appeal.  ECF Doc. 14-15 at 3; First DCA Case No.: 1D17-3224.  Also, on November 30, 2015, Patel filed a Motion for Postconviction Relief under Rule 3.850, which was continuously pending through several amendments,[2] until September 4, 2019, when the First DCA issued its mandate affirming the denial.  ECF Doc. 19-20 at 2.  Thus, the one-year deadline was tolled from July 24, 2015 to September 4, 2019.  Patel filed the original federal petition, ECF Doc. 1, on January 13, 2020, one day before the AEDPA deadline expired.  The original petition contained four grounds for relief.

On July 13, 2020, Patel filed an amended petition, containing two additional grounds for relief (Grounds Five and Six).  For those grounds to be timely, they must relate back to the original petition.  Petitioner argues those grounds relate back to the original petition because they arise out of the same common core of operative facts as Ground One of the original petition.  The undersigned agrees.  As discussed below, all three grounds are based on whether facts exist in the record showing Patel was not competent shortly before, or at the time of, trial.  "So long as the original

---

[2] The final version of the 3.850 motion was filed October 26, 2016, and is found at ECF Doc. 19-16 at 65.

and amended petitions state claims that are tied to a common core of operative facts, relation back will be in order." *Mayle v. Felix*, 545 U.S. 644, 664 (2005) (citing Fed. R. Civ. P. 15(c)(2)). Thus, those claims are also timely.

## II.    LEGAL STANDARDS

### A.    AEDPA

The AEDPA governs a state prisoner's petition for habeas corpus relief. 28 U.S.C. § 2254. Under the AEDPA, relief may only be granted on a claim adjudicated on the merits in state court if the adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). This standard is both mandatory and difficult to meet. *White v. Woodall*, 572 U.S. 415, 419 (2014). "Clearly established federal law" consists of the governing legal principles set forth in the decisions of the United States Supreme Court when the state court issued its decision. *Id.* A decision is "contrary to" clearly established federal law if the state court either: (1) applied a rule that contradicts the governing law set forth by Supreme Court case law; or (2) reached a different result

from the Supreme Court when faced with materially indistinguishable facts. *Ward v. Hall*, 592 F.3d 1144, 1155 (11th Cir. 2010); *Mitchell v. Esparza*, 540 U.S. 12, 16 (2003).

A state court decision involves an "unreasonable application" of Supreme Court precedent if the state court correctly identifies the governing legal principle, but applies it to the facts of Patel's case in an objectively unreasonable manner, *Brown v. Payton*, 544 U.S. 133, 134 (2005); *Bottoson v. Moore*, 234 F.3d 526, 531 (11th Cir. 2000), or "if the state court either unreasonably extends a legal principle from [Supreme Court] precedent to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Bottoson*, 234 F.3d at 531 (quoting *Williams v. Taylor*, 529 U.S. 362, 406 (2000)).  "A state court's determination that a claim lacks merit precludes federal habeas relief so long as fair-minded jurists could disagree on the correctness of the state court's decision." *Harrington v. Richter*, 562 U.S. 86, 101 (2011).

Also, factual determinations by the state courts are "presumed to be correct, and the petitioner can rebut this presumption only by clear and convincing evidence." *Harrell v. Butterworth,* 251 F.3d 926, 930-31 (11th Cir. 2001) (citing *Mincey v. Head,* 206 F.3d 1106, 1130 n.58 (11th Cir. 2000)).  The presumption of

correctness afforded factual findings extends to both trial and appellate state courts. 28 U.S.C. § 2254(e)(1); *Jennings v. Crosby*, 392 F. Supp. 2d 1312, 1318 (N.D. Fla. 2005), *aff'd sub nom. Jennings v. McDonough*, 490 F.3d 1230 (11th Cir. 2007).

### B.    Ineffective Assistance of Trial Counsel Claims

Patel raises several grounds based on ineffective assistance of trial counsel ("IATC").  An IATC claim requires a showing that (1) counsel's performance during representation fell below an objective standard of reasonableness, and (2) prejudice resulted, *i.e.*, that a reasonable probability exists that but for counsel's unprofessional conduct, the result of the proceeding would have been different. *Strickland v. Washington*, 466 U.S. 668, 689 (1984).  The reasonableness of counsel's performance is to be evaluated from counsel's perspective at the time of the alleged error and in light of all the circumstances, and the standard of review is highly deferential.  *Id.* at 689.  The petitioner bears the burden of proving counsel's performance was unreasonable under prevailing professional norms and the challenged action was not sound strategy.  *Id.* at 688-89.

*Strickland*'s prejudice prong requires a petitioner to allege more than simply that counsel's conduct might have had "some conceivable effect on the outcome of the proceeding."  *Id.* at 693.  Petitioner must show a reasonable probability exists

that, "but for counsel's unprofessional errors, the result of the proceeding would have been different." *Id.* at 694. Bare allegations of prejudice are not enough. *Smith v. White*, 815 F.2d 1401, 1406-07 (11th Cir. 1987).

## III. DISCUSSION

### A. Grounds One, Five and Six: Patel's Alleged Incompetence

The undersigned will discuss Grounds One, Five, and Six together because they hinge on Patel's competency shortly before, and at the time of, trial. In Ground One, Patel argues counsel was ineffective for allowing Patel to reject a favorable plea offer without having his competency re-evaluated. In Ground Five, Patel argues the state court erred in trying an incompetent person, and, in Ground Six, Patel argues the state court erred in failing to have his competency re-evaluated prior to trial. As discussed below, the undersigned finds a lack of evidence in the record to show Patel was incompetent shortly prior to or at trial, as necessary to support any of these three grounds.

### 1. Ground One: IATC in Presenting Plea Offer Without Re-examining Patel's Competency

Shortly after Patel was arraigned, defense counsel raised questions regarding Patel's competency. As a result, the state court appointed Dr. Stephen Bloomfield, Ph.D., and Dr. William R. Meadows, Ph.D., to evaluate him. ECF Doc. 19-2 (June

1, 2010 commitment order). Based on these doctors' written reports and oral testimony, the court adjudged Patel incompetent to proceed and committed him to the Department of Children and Families. *Id.* On November 4, 2010, after reviewing a report from the North Florida Evaluation and Treatment Facility, the Court found Patel was competent to proceed. ECF Doc. 19-4 (Nov. 4 hearing transcript).

At the November 4 review hearing, defense counsel also sought to have Patel released on bond. *Id.* The State objected and argued "if he lapses on his medication, he is a very very serious danger to the community." *Id*. at 5. The court reinstated the $250,000.00 bond, and added the following two special conditions of Patel's release:

> The defendant shall be seen on a weekly basis by Dr. Stephen Bloomfield, or by a mental health expert from a mental health facility approved by Dr. Stephen Bloomfield; and Dr. Bloomfield shall report to the Court immediately any deterioration of the defendant's mental health status.

> The defendant shall take any and all prescribed medications on a daily basis in the presence of and under the supervision of a medical or mental health professional.

ECF Doc. 19-4 at 7; ECF Doc. 19-5 at 2 (amended order reinstating bond).

Patel argues in Ground One that, despite those conditions, at some point after his release, Patel became financially unable to pay for home healthcare provider ComForCare to assist him with managing his medications and, therefore, there is no

objective confirmation Patel continued to take his medications after that time. Patel states that after he stopped taking the medications, his mental condition deteriorated. Patel argues counsel was ineffective for presenting a 5-year plea deal to him from the State while he was in a deteriorated condition and without having his competency re-evaluated.

Patel raised Ground One in his 3.850 motion; thus, it is exhausted. Because the First DCA affirmed the state court's denial of the motion without a written opinion, the Court will "look through" the First DCA decision to the state court's 3.850 order denying relief for the state's rationale. *Wilson v. Sellers,* 138 S. Ct. 1188, 1192 (2018). In that order, the court found Patel's allegations as to Ground One "were refuted by the record." ECF Doc. 19-16 at 100. Specifically, they were contrary to the testimony of Dr. Bloomfield, who was tasked with the responsibility of monitoring Patel's mental health while on release. ECF Doc. 19-16 at 100. Thus, the court denied relief because "there was court-ordered monitoring in place to ensure Defendant did not lose competency from the time he was released from the hospital to the time of trial." *Id.* Patel fails to rebut the presumption of correctness attributed to the court's findings of fact. *See* 28 U.S.C. § 2254(e)(1).

When the state court reinstated Patel's bond in November 2010, the court was cognizant of the State's legitimate concern that without his medications, Patel could be a danger to the community. To mitigate that danger, the court ordered Dr. Bloomfield to meet with Patel, at least once a week, monitor his mental health, *and* report to the court "immediately" of any deterioration. In carrying out this directive, Dr. Bloomfield met with Patel "58 or 59 times" while he was on release. ECF Doc. 19-6 at 584 (Trial Tr.). He started seeing Patel weekly and then "went to every other week." *Id.* The visits began "more intense" and then were "phased [] down to less time per meeting." *Id.* Dr. Bloomfield reported each meeting to the probation officer. *Id.* Dr. Bloomfield explained the purpose of these visits was to monitor Patel and "to see if he decompensated, to see if he was compliant with his medications, to see if there were any changes that the Court needed , ah – that the Court needed to know about." *Id.* Dr. Bloomfield further testified that Patel was "very compliant, he, ah, took his medication" and "was very adherent to the treatment that was prescribed" by Mental Health Center of Jacksonville. ECF Doc. 19-6 at 585.

In the amended petition, Patel takes issue with the state court's factual findings because he contends Dr. Bloomfield was not tasked with monitoring the

intake of Patel's medication; instead, "that responsibility was assigned to a separate medical provider, which Petitioner had to pay for." ECF Doc. 16 at 25. Patel is splitting hairs. Regardless of whether Patel had someone to manage his medications, the court charged Dr. Bloomfield with reporting "immediately" to the court "any deterioration," and, as Dr. Bloomfield explained, to do that he met with Patel regularly to see if he was decompensating and to see if he was "compliant with his medications." ECF Doc. 19-6 at 584. Dr. Bloomfield was aware Patel had ceased using ComForCare and nonetheless found Patel to be compliant with his medications.[3]

The state court did not err in determining Patel's arguments in Ground One were refuted by the record. If, as Patel argues, the bond conditions "did not work," then Dr. Bloomfield would have seen obvious signs of deterioration. Thus, to grant relief on this ground, the state court would have had to conclude (as would this

---

[3] Patel argues in the Reply that Dr. Bloomfield may not have recognized the "import" of Patel's termination of the home health care provider because he is not a psychiatrist. That argument is purely speculative. Given the state court's clear directive to Dr. Bloomfield, the converse would be true. That is, because Dr. Bloomfield knew Patel ceased using ComForCare and reported that fact to probation, Dr. Bloomfield would have recognized the heightened need to look for signs that Patel was not "compliant with his medications."

Court) that Dr. Bloomfield simply abdicated his court-imposed obligations and ignored Patel's lack of compliance with treatment and deterioration.

Also, the record shows between October 2011 to April 2013, when Petitioner contends he was decompensating, Petitioner regularly attended numerous pre-trial hearings and maintained proper courtroom behavior. On some occasions he also communicated with the court. In fact, during the trial, the prosecution asked the court to "inquire for the potential future reasons on the record as to Mr. Patel's current mental state, as to whether or not he's under the influence of anything that's confusing him, and that he understands what's taking place, things of that nature," for appellate purposes. The court agreed and engaged in the following colloquy.

THE COURT: Mr. Patel, are you under any kind of medication today?

THE DEFENDANT: Yes

THE COURT: Are you able to understand and make decisions today, sir?

THE DEFENDANT: Yes, ma'am.

THE COURT: Are you confused at all by this trial or have you understood what is going on?

THE DEFENDANT: I do understand.

THE COURT: And, Mr. McGuinness and Mr. Andux, have you-all had what we might call intelligent discussions with your client, in terms of, I mean, competent discussions.

MR. CALIEL: His intelligence, not yours, gentlemen.

MR. MCGUINNESS: Yes, I was going to say, insofar as I'm capable.

THE COURT: Yeah, yeah, but where you-all believe he is understanding and able to participate in the trial?

MR. MCGUINNESS: Yes, Your Honor.

THE COURT: Would you agree with that, Mr. Andux?

MR. ANDUX: Yes, Your Honor.

ECF Doc. 19-7 at 251-52.  Based on Patel's answers, Patel was taking his medications and understood the proceedings.  Based on counsel's representations, they did not have any concern with Patel's ability to understand and participate in the trial.

Additionally, as Respondent points out, during the June 10, 2013 sentencing and supersedeas bond motion hearing, Patel testified he took his medicines the last three and a half years, when he was out on bond.  ECF Doc. 19-9 at 14-15.  He told the court, in the hopes to continue his bond status on appeal, "I can assure you that, and I can continue to see doctor, psychiatrist, as the court ordered.  I used to see my doctor every week. I can continue to do that."  *Id.* at 17.  Patel's wife also confirmed

under oath that Patel "always took his medicine" and his nephew testified to the same. *Id.* at 10-11. Thus, as the state court found, the record undermines Patel's claim he had ceased taking his medications and is devoid of any evidence he was incompetent immediately prior to or at trial.

Also, the state court's legal conclusion was not contrary to, and did not involve an unreasonable application of, clearly established Federal law, as determined by the Supreme Court. 28 U.S.C. § 2254(d). When a petitioner challenges the voluntariness of his plea based on allegations of ineffective assistance of counsel, the two-prong standard set forth in *Strickland* applies. The focus of *Strickland*'s performance prong in a plea situation is "whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.'" *Hill v. Lockhart*, 474 U.S. 52, 56-57 (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). As discussed above, nothing in the record shows counsel had any reason to suspect Patel was not competent to consider the plea. Thus, counsel could not have been ineffective for failing to request an additional evaluation be done. It was certainly more than reasonable performance for counsel to rely on their own interactions with Patel and the lack of any adverse reports from Dr. Bloomfield to conclude Patel was competent to assist in his own defense, including rejecting a plea.

Patel also has not shown he was prejudiced by counsel's failure to re-evaluate his competency to reject the plea. His threadbare claim that he would have accepted the plea offer had he been competent to do so is simply not sufficient under *Strickland*. *See United States v. Smith*, 983 F.3d 1213, 1222 (11th Cir. 2020) ("The defendant's 'own conclusory after-the-fact assertion' that he would have accepted a guilty plea, without more, is insufficient to satisfy the first prong of the prejudice test.") (quoting *Rosin v. United States*, 786 F.3d 873, 879 (11th Cir. 2015)). Patel is not entitled to relief on Ground One.

2.    <u>Ground Five: Substantive Incompetency</u>

In Ground Five, Patel raises a substantive incompetency claim. That is, he argues the court violated the Due Process Clause of the Fourteenth Amendment by trying an incompetent person.[4] As an initial matter, although it is undisputed Patel did not exhaust this claim,[5] the undersigned will nonetheless consider it on the merits

---

[4] The Due Process Clause of the Fourteenth Amendment prohibits states from trying and convicting defendants who are mentally incompetent. *Moore v. Campbell,* 344 F.3d 1313, 1321 (11th Cir. 2003) (*citing Medina v. Singletary,* 59 F.3d 1095, 1106 (11th Cir. 1995)).

[5] It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner exhaust available state court remedies, *see* 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." *Duncan*

because claims of incompetency to stand trial are not subject to the procedural default rule. *See e.g., Battle v. U.S.*, 419 F.2d 1292, 1298 (11th Cir. 2005).

A petitioner advancing a substantive competency claim "is entitled to no presumption of incompetency and must demonstrate his . . . incompetency by a preponderance of the evidence." *Lawrence v. Sec'y, Fla. Dep't of Corr.*, 700 F.3d 464, 481-82 (11th Cir. 2012) (citing *James v. Singletary*, 957 F.2d 1562, 1571 (11th Cir. 1992)). To be entitled to an evidentiary hearing, Patel must be able to show he could present "clear and convincing evidence creating a real, substantial and legitimate doubt as to his competence to stand trial." *Medina*, 59 F.3d at 1106. Under both federal and Florida law, competency to stand trial requires the defendant have "sufficient present ability to consult with counsel with a reasonable degree of rational understanding and whether the defendant has a rational, as well as factual, understanding of the pending proceedings." *See* Fla. R. Crim. P. 3.211(a); *Adams v. Wainwright*, 764 F.2d 1356, 1360 (11th Cir. 1985).

---

*v. Henry,* 513 U.S. 364, 365, (1995) (quoting *Picard v. Connor*, 404 U.S. 270, 275 (1971) (citation omitted)). To satisfy the exhaustion requirement, Patel must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim. *Duncan*, 513 U.S. at 365-66.

Patel attempts to meet this burden through the affidavit of Dr. Sudil Gadh, ECF Doc. 16-1, a psychiatrist hired by Patel to offer a retrospective opinion as to Patel's competency at the time of trial.  Dr. Gadh opines in his July 2020 affidavit that Patel stopped taking his medications by October 2011 and remained incompetent through the time of trial in April 2013.  He also opines that it is a general standard for a mental patient to be assumed as not having taken his medications unless such intake can be objectively confirmed.  Dr. Gadh points to Patel's failed suicide attempt after the verdict and his atypical religious beliefs to support his opinion that Patel "relapsed into incompetence" and was incompetent at the time of his trial in April 2013.

Dr. Gadh's opinions do not meet the standard for granting Patel an evidentiary hearing.  *Id.*  "The standard of proof is high" and "the facts must positively, unequivocally, and clearly generate the legitimate doubt."  *Id.*  Dr. Gadh attributes Patel's lack of competence at trial to three factors: (1) the time between his release from the state mental hospital and his trial, (2) the lack of an integrated treatment team, and (3) inappropriate medication choices.  Dr. Gadh, however, did not examine Patel at the time of trial or meet with him 58-59 times as Dr. Bloomfield did.  Dr. Gadh did not interact with Patel as did his counsel and the state court.

Instead, Dr. Gadh's opinions are based primarily on a review of the transcripts, medical records, statistical data, and industry practice or literature. Dr. Gadh's opinion that Patel had stopped taking his medications in October because psychiatric patients cannot be relied upon to take their medications and that is the date Patel ceased using ComForCare is speculative, as is Dr. Gadh's opinion that even if he was on medication, it may not have been sufficient to keep him competent. These opinions are not based on any observed changes in Patel's behavior caused by any deterioration that was present between October 2011 and April 2013, when he was being monitored by Dr. Bloomfield.

Patel tries to minimize the 58 visits Dr. Bloomfield had with him by arguing that the sessions got shorter and more infrequent. However, the fact that Dr. Bloomfield reduced their sessions to every other week and for shorter periods shows Dr. Bloomfield did not have concerns with Patel's competency. Patel also argues that just because Dr. Bloomfield failed to notice signs of incompetence on a visit "may" mean the subject of Patel's disorder was not addressed in that visit. That argument is a non-starter. Dr. Bloomfield did not visit Patel sporadically and he did not visit Patel for the purposes of engaging in small take or social purposes. Dr.

Bloomfield visited Patel 58 times, weekly or every two weeks, to report to the court if Patel was decompensating.[6]

Finally, while Dr. Gadh opines Patel was incompetent at trial, he does not point to any evidence showing Patel lacked the ability to assist counsel and participate in his defense, making this case very different from *James v. Singletary*, 957 F.2d 1562 (11th Cir. 1992), relied on by Patel. Unlike Dr. Gadh, the expert in *James* applied the clinical features of the petitioner's disorder to the factors the court considers for competency and concluded petitioner lacked the ability to disclose pertinent facts to his attorney, relate to his attorneys, assist his attorneys in planning a defense, challenge the prosecution, and testify. *James*, 957 F.2d at 1574. Also, unlike the facts and posture of this case, in *James* "no state court, from the judge who presided over the proceedings in the trial court to the Florida Supreme Court in its opinion affirming the denial of petitioner's 3.850 motion, has ever made findings of historical facts underlying a determination of competency. Indeed, no state court

---

[6] Patel's argument that "the court did not require reports from [Dr. Bloomfield]" is simply disingenuous. While regular reports were not required, the court made clear Dr. Bloomfield was to immediately report any deterioration.

has found petitioner to have been competent to stand trial." *Id.* at 1574. Patel's reliance on *James* is misplaced.

Patel has not met his burden to show that he is entitled to an evidentiary hearing on the substantive competency claim. Notably, Patel does not specifically contend he stopped taking the medications (i.e., he has not submitted a declaration or affidavit to that effect; nor does he contend he will offer such testimony at an evidentiary hearing). Patel also does not specifically state when he stopped taking the medications,[7] what medications he stopped taking, or how his behavior changed without the medications – and thus affected his ability to participate in his defense or communicate with counsel.

3.    Ground Six: Procedural Incompetency

In Ground Six, Patel raises a procedural incompetency claim; that is, he argues the trial court should have held a competency hearing prior to trial, particularly after Dr. Bloomfield advised probation medical professionals were no longer being retained by Patel to supervise his taking of medications but instead Patel's wife

---

[7] In Patel's 3.850 motion, he states he stopped take his medications mid-2012. In the reply filed in this action, however, Patel argues he ceased taking antipsychotic medication by October 26, 2011. ECF Doc. 21 at 3.

handled this daily duty.  Patel also did not exhaust this claim.  Unlike a substantive due process claim, however, the procedural bars *do* apply to procedural incompetency claims.  *Medina*, 59 F.3d at 1111.  Patel argues, however, that he should nonetheless be able to proceed with this claim because "mental illness can constitute cause and prejudice when it interferes with the petitioner's ability to exhaust his claims in state court."  ECF Doc. 16 at 67 (citing *Holt v. Bowersox*, 191 F. 3d 970, 974 (9th Cir. 1999)).  Patel has pointed to no evidence showing that was the case here.  Regardless, even if not procedurally defaulted, the claim fails on the merits.

To prevail on a procedural incompetency claim, "a petitioner must establish that the state trial judge ignored facts raising a 'bona fide doubt' regarding the petitioner's competency to stand trial."  *Medina*, 59 F.3d at 1106.  There are "no fixed or immutable signs which invariably indicate the need for further inquiry to determine fitness to proceed; evidence of a "defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant."  *Id.* (citing *Drope v. Missouri*, 420 U.S. 162, 180 (1975)).  Federal review of a claim that the state court should have held a competency hearing is limited to

the evidence and information that was made available to the state trial court at the time of trial. *Lay v. Royal*, 860 F.3d 1307, 1314 (10th Cir. 2017).

Here, as discussed extensively above, the state court appointed a psychological professional, Dr. Bloomfield, to monitor Patel during the period before trial and report deteriorations to the court. Dr. Bloomfield did so, meeting with Patel frequently. Dr. Bloomfield made no reports to the court of any deterioration. Also, Dr. Bloomfield was aware Patel had stopped retaining independent medical personnel to supervise the taking of his medications, reported that to probation, but did *not* report Patel showed any signs he had actually stopped taking his medications or that he had decompensated. Also, as stated above (in Ground One), the trial court engaged in a colloquy with Patel and defense counsel to ensure Patel was competent to stand trial. Thus, the trial judge did not ignore any facts which raised doubt regarding Patel's competency. Patel is not entitled to habeas relief on his procedural incompetency claim.

## B. Ground Two: IATC for Failing to Adequately Argue the Motion for New Trial

In Ground Two, Patel argues counsel was deficient for failing to make more than a boilerplate motion for a new trial and for failing to argue the verdict was contrary to the weight of the evidence. Specifically, he contends testimony of family

and friends, including Patel's former boss, who attested to his behavior and state of mind at trial, and three psychologists, who opined Patel was insane due to his delusional disorder at the time of the crime, overcame the State's sole psychiatrist witness, who based his conclusions on the hearsay reports of other mental health professionals, depositions, and a short visit with Patel. Patel argues counsel should have summarized these testimonies when moving for a new trial.

Patel concedes this claim was not exhausted in state court but seeks to proceed under the exceptions identified in *Martinez v. Ryan,* 566 U.S. 1 (2012). In most instances, an attorney's ignorance or inadvertence in a postconviction proceeding does not qualify as cause to excuse a procedural default. *See, e.g.*, *Coleman v. Thompson*, 501 U.S. 722, 753-55 (1991). However, the Supreme Court modified the *Coleman* rule in *Martinez*. In *Martinez,* the Court held that a prisoner may establish cause for a default of an ineffective-assistance claim in the following two circumstances: (1) where the state courts did not appoint counsel in the initial-review collateral[8] proceeding for a claim of ineffective assistance at trial and (2) where

_____

[8] In *Martinez*, the Court defined "initial-review collateral proceedings" as "collateral proceedings that provide the first occasion to raise a claim of ineffective assistance at trial." *Palmer v. Sec'y,*

appointed counsel in the initial-review collateral proceeding, where the claim should have been raised, was ineffective under *Strickland*.   *Martinez*, 566 U.S. at 14. Additionally, the Court made clear that "[t]o overcome the default, a prisoner must also demonstrate that the underlying ineffective-assistance-of-trial-counsel claim is a substantial one, which is to say that the prisoner must demonstrate that the claim has some merit."   *Id.*   "[S]ubstantial" has the same meaning as the standard for issuing a Certificate of Appealability, which requires "a substantial showing of the denial of a constitutional right."   *Hittson v. GDCP Warden*, 759 F.3d 1210, 1269 (11th Cir. 2014) (quotations omitted).

Patel, however, has not met that standard because he cannot show the state court would have granted the motion, even if counsel had made the arguments Patel posits now.   Thus, Patel cannot demonstrate prejudice under *Strickland*.   "When a trial court evaluates a motion for new trial that contains a rule 3.600(a)(2) claim, it must consider the weight of the evidence rather than the sufficiency of the evidence." *Franklin v. State*, 286 So. 3d 962, 965 (Fla. Dist. Ct. App. 2020).   "[T]he weight of

---

*Dep't of Corr.*, 2022 WL 3923832, at *3 (11th Cir. Aug. 31, 2022).   In Florida, ineffective assistance of counsel claims cannot generally be raised on direct appeal.   Instead, they must usually be raised in a motion for postconviction relief under Florida Rule of Criminal Procedure 3.850.

the evidence tests to see whether a greater amount of credible evidence supports one side over the other." *Id.* The fact that Patel presented more witnesses to support the insanity defense does not mean those witnesses carried more weight to the jury than the state's single expert witness, Dr. Waldman.

Under Florida law, insanity is established if two requirements are met. First a defendant must show the existence of a mental infirmity, disease, or defect. Fla. Stat. § 775.027(1)(a). Second, a defendant must show they either "did not know what he or she was doing or its consequences" or "the defendant did not know that what he or she was doing was wrong." Fla. Stat. § 775.027(1)(b). Defendants have the burden of proving this defense by clear and convincing evidence. Fla. Stat. § 775.027(2).

Here, the jury's guilty verdict was not against the manifest weight of the evidence. While the testimonies presented in the defense case may have supported an insanity defense, the evidence submitted by the State clearly conflicted with that position. The State, for example, presented evidence showing Patel knew what he was doing when he shot Amin, and also knew that it was wrong. For example, prior to shooting Amin, Patel had made numerous verbal threats to Amin. Also, Patel made a statement to the police officer transporting him after his arrest that "[t]his

guy has torn apart other families and I was going to put a stop to it" and to another officer "I took care of him because he laid on my wife.  I took care of it," which shows that he was acting out of anger towards the victim rather than fear.  ECF Doc. 19-7 at 337, 341.  The same officer testified Patel was not "chanting or ranting and raving or anything like that" and understood police command.  ECF Doc. 19-6 at 363.  Also, when Patel arrived home, he banged his head against the wall like he knew he had done something wrong, ECF Doc. 19-7 at 338, and he told three different stories regarding what he had done with the gun, *id.*

The video of the shooting at the store where Amin worked showed Patel deliberately going towards Amin, firing the first shot, then (as Amin scurried away across the floor to get away) reaching over the counter and shooting a second time at him.  *Id.* at 337-38.  A customer testified Patel and Amin appeared to be having a normal (unheated) conversation when he walked into the store, and that they stopped talking when they saw him.  ECF Doc. 19-6 at 309-11.  Additionally, the customer testified Patel moved to the side of the counter for the customer to pay.  *Id.* at 311. He did not notice anything unusual or concerning about Patel.  *Id.* at 311-12.

During Dr. Waldman's testimony, he pointed out that Patel had changed the circumstances and facts of his story to various evaluators, which evinced lack of

truthfulness, ECF Doc. 19-7 at 318-19.  For example, Patel claimed to be afraid of the victim, but his phone call to him was aggressive and angry rather than fearful, *id.* at 321.  Also, Patel's description of visions on the Shiva stone looking like tiny characters on a "little television screen" was "inconsistent with the visual hallucinations that are seen in any kind of psychotic reaction" and evince malingering or faking.  *Id.* at 327-28.  Patel claimed for the first and only time to Dr. Waldman that he saw the victim with a gun in his hand at the time of the shooting, *id*. at 335.

"A jury's verdict is generally not against the manifest weight of the evidence if the record shows conflicting testimony from two or more witnesses." *Bachman v. Oliveros,* 293 So. 3d 555, 560 (Fla. 5th DCA 2020), *reh'g denied* (May 8, 2020). That is clearly what happened here – the jury heard testimony from Patel's family and friends and psychiatrists and simply considered the State's evidence to be more compelling.  Thus, even had counsel made a more robust motion for new trial, Patel has not shown it would have been granted.  Thus, Patel's ineffective assistance of counsel claim is not "substantial." *Martinez*, therefore, does not apply, and Patel has defaulted this ground for relief by failing to fairly present it to the state courts.

### C.    Ground Three: Patel Was Deprived of a Fair and Impartial Jury and Counsel was Ineffective for Failing to Move for a Mistrial

### When a Juror Note Indicated a Juror Might Not Be Able to Proceed

Less than an hour into deliberations, the state court received a note from the jury that a juror may not want to participate because of her/his beliefs.  The note stated:

> We have a juror who feels as to they cannot pass judgment on the defendant, or anyone for that matter, because of their own beliefs.  We may have a juror who does not want to participate.  We may need an alternate.  What should we do?

ECF Doc. 19-6 at 681, Tr. 1290.  The prosecutor suggested the court "find out who the foreperson is and ask for clarification on the issue of who the juror is and what the issue is, so the court can inquire."  *Id.*  Defense counsel objected and argued, "They have been given all the law that pertains to this case, we are counting on them to make a wise and just decision.  And just leave it alone.  It's too early for an *Allen* charge, because they haven't indicated a deadlock, but I don't think we can get into identifying particular jurors or taking jurors off."  *Id.* at 682, Tr. 1291.  The state court indicated that it would not inquire of the juror further and, instead, simply reread the jury instruction "Submitting the Case to the Jury."  *Id.* at 685, Tr. 1294.  Defense counsel stated they did not object.  Patel claims the state court violated his

rights under the Sixth and Fourteenth Amendments by failing to provide him with a fair and impartial jury and counsel was ineffective for failing to move for a mistrial.

Patel did not exhaust the trial court error portion of this Ground and is now procedurally barred from raising it in state court. In Florida, challenges to a jury's composition and deliberation can only appropriately be raised on direct appeal following a defendant's conviction. *McDonald v. Sec'y, Dep't of Corr.*, 2018 WL 10517118, at *9 (M.D. Fla. Oct. 31, 2018). Patel did not raise this issue on direct appeal, and Florida's "procedural rules do not provide for successive direct appeals...[rendering an] unexhausted claim [ ] procedurally defaulted." *White v. Sec'y, Dep't of Corr.*, 2017 WL 1165576 at *5 (M.D. Fla. Mar. 29, 2017).

"A petitioner who fails to exhaust his claim is procedurally barred from pursuing that claim on habeas review in federal court unless he shows either cause for and actual prejudice from the default or a fundamental miscarriage of justice from applying the default." *Lucas v. Sec'y, Dep't of Corr.*, 682 F.3d 1342, 1353 (11th Cir. 2012). Patel does not attempt to make either showing. Instead, Patel relies on *Martinez* and claims "appellate counsel should have raised the issue as a fundamental error on direct appeal." ECF Doc. 16 at 47. As the Respondent points out, however, *Martinez* does not apply to ineffective assistance of appellate counsel.

*See Davila v. Davis,* 137 S. Ct. 2058, 2065-66 (2017) (declining to extend to the default of petitioner or postconviction counsel in bringing an ineffective assistance of appellate rather than trial counsel claim).

Patel also did not exhaust the IATC part of this Ground, and the *Martinez* exception does not salvage this part of his claim because the claim is not a "substantial one." Patel relies on *Williams v. State*, 792 So.2d 1207 (Fla. 2001) to show trial counsel's failure was ineffective. *Williams*, however, is inapposite. The dispositive issue in that case was "whether the trial court reversibly erred in substituting an alternate juror into the jury panel to replace an original juror who was unable to proceed after the deliberative process had already begun." *Id.* at 1208. That decision provides no guidance on whether a motion for mistrial would have been granted here.

Patel has not pointed to anything other than speculation that the verdict was not unanimous and that the remedy adopted by the trial court did not have the desired effect. After the verdict, the jury was polled and each attested that the verdict was their own. ECF Doc. 19-7 at 694-96. Thus, even if counsel had moved for a mistrial, Patel has not shown that there is a reasonable probability that the court would have

granted a mistrial given the remedy the court imposed.  Patel is not entitled to relief on Ground Three.

### D.    Ground Four: Patel Was Deprived of a Fair and Impartial Jury Due to the Admission of Highly Prejudicial Hearsay Evidence and Counsel Was Ineffective for Failing to Object

Patel contends the trial court erred in admitting his wife's statements during a clinical interview and at deposition that she had an affair with Amin.  Patel states this violated his right to confront witnesses under the Sixth Amendment since his wife did not testify at trial and counsel should have moved to exclude this hearsay testimony.

As with Ground Three, Patel has procedurally defaulted the trial court error portion of this claim, has failed to show cause and prejudice or a fundamental miscarriage of justice, and the *Martinez* exception does not apply to claims of ineffective assistance of appellate counsel.  Thus, Patel is not entitled to relief as to trial court error.  Likewise, the undersigned also finds Patel cannot show the IATC portion of Ground Four is a "substantial one" under *Martinez*.

First, Patel has not shown that counsel was deficient under *Strickland* because any objection to the references to the out-of-court statements would likely have been rejected as the statements were not offered for the truth of the matter asserted.

Instead, the comments were offered to show their effect on Patel. The medical experts referred to the wife's comments to explain Patel's mindset and the facts on which their opinions were based regarding Patel's mental state. Also, as Respondent points out, the defense also relied on Mrs. Patel's admission, and later denial, of having an affair with Amin as part of its trial strategy. Specifically, defense counsel stated in opening argument he expected Patel's wife to say that she recanted this and said it only because "if that's what Shiva said and there was black magic, then that's what must have happened." ECF Doc. 19-6 at 258, Tr. 254. The defense, in support of this theory, presented witnesses to testify they did not believe her admissions to the affair. *Id.* at 224-26, 229, 238, 835-837, 840, 849. Thus, because the comments were not offered for their truth, counsel cannot be deemed ineffective for failing to make a hearsay objection. *Chandler v. Moore*, 240 F.3d 907, 917 (11th Cir. 2001) (counsel is not ineffective for failing to raise a non-meritorious objection).

Additionally, Patel has not shown he was prejudiced by the admission of the disputed testimonies. Even if his wife's comments and recantations were excluded, various witnesses would still have testified to Patel's belief that his wife was having an affair. Various family members and the psychological expert witnesses all testified that Patel had told them so. That belief – whether accurate or not – was

motive enough to establish that Patel had the intent to murder the victim. Moreover, sufficient evidence other than the wife's comments about the affair supported the jury finding that Patel knew what he was doing at the time of the offense: Patel's verbal threats to kill the victim a day prior to the shooting, the videotape of the crime, Patel's appearance at the victim's liquor store with a loaded gun and an extra clip, his flight from the scene, his submission to police authority and pre- and post-arrest statements, and statements to the State's expert witness that he knew the wrongfulness of his act when he shot the victim. Patel is not entitled to habeas relief on this claim.

## IV.   CONCLUSION

### A.   Evidentiary Hearing

The undersigned finds that an evidentiary hearing is not warranted. In deciding whether to grant an evidentiary hearing, this Court must consider "whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." *Schriro v. Landrigan,* 550 U.S. 465, 474 (2007). Additionally, this Court must take into account the deferential standards prescribed by § 2254. *See id.* Upon consideration,

the undersigned finds that the claims in this case can be resolved without an evidentiary hearing. *See Schriro*, 550 U.S. at 574.

## B. Certificate of Appealability

Rule 11(a) of the Rules Governing Section 2254 Cases in the United States District Court provides: "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." If a certificate is issued, "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)." 28 U.S.C. § 2254 Rule 11(a). A timely notice of appeal must still be filed, even if the court issues a certificate of appealability. 28 U.S.C. § 2254 Rule 11(b).

After review of the record, the Court finds no substantial showing of the denial of a constitutional right. 28 U.S.C. § 2253(c)(2); *Slack v. McDaniel*, 529 U.S. 473, 483-84 (2000) (explaining how to satisfy this showing) (citation omitted). Therefore, it is also recommended that the district court deny a certificate of appealability in its final order.

The second sentence of Rule 11(a) provides: "[B]efore entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue." Rule 11(a), Rules Governing 2254 Cases. If there is an objection to

this recommendation by either party, that party may bring such argument to the attention of the district judge in the objections permitted to this report and recommendation.

It is respectfully RECOMMENDED:

1.    That the amended petition under 28 U.S.C. § 2254, challenging the conviction in *State v. Patel*, Duval County, Florida case number 2009 CF 12020, ECF Doc. 16, be DENIED without an evidentiary hearing.

2.    That a certificate of appealability be DENIED.

3.    That the clerk be directed to close the file.

DONE at Pensacola, Florida, this 23rd day of September, 2022.

*/s/ Hope Thai Cannon*
**HOPE THAI CANNON**
**UNITED STATES MAGISTRATE JUDGE**

NOTICE TO THE PARTIES

Objections to these proposed findings and recommendations must be filed **within fourteen (14) days** of the date of the Report and Recommendation. Any different deadline that may appear on the electronic docket is for the court's internal use only and does not control. An objecting party must serve a copy of its objections upon all other parties. A party who fails to object to the magistrate judge's findings or recommendations contained in a report and recommendation waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions. *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.